Good morning, your honors. Emily Wood from the Office of the State Appellate Defender on behalf of Clarence Williams. Assistant State Attorney Peter Maltese on behalf of the people. Good morning. We have allotted 30 minutes for this case. That's a goal. We will divide that time equally between the two parties and the appellant may reserve a few minutes for rebuttal if you so choose. And with that, we can begin. Thank you, your honors. I would like to reserve ahead of time about five minutes for rebuttal. Again, my name is Emily Wood. I'm from the Office of the State Appellate Defender on behalf of Clarence Williams. We raised four issues in our brief and today I'd like to focus solely on issue one regarding the insufficient evidence of Clarence's accountability for the acts of other people in firing into a crowd of people resulting in the death of a 10-year-old boy. The events of that day involve a group of gangster disciples who crossed over 55th towards a bus stop on Halstead. Now several young men at that bus stop decided to fire a gun and in fact shot a gun towards the group. Clarence is around the corner and well down the street. He's at the end of a strip mall near a sandwich shop and he hears those gunshots. He fires a reactionary shot into the air away from the group. Now the only evidence that would connect Clarence to the young men at the bus stop is provided by John L. Brown. But the record here demonstrates that John L. Brown is simply not worthy of belief. The trial court correctly found that John L. was the linchpin in the state's case against Clarence, but incorrectly found John L. credible and did so based on an erroneous belief that John L.'s testimony was actually corroborated by other evidence. This court should actually reduce Clarence's conviction to reflect the offense that's actually supported by the evidence, which is aggravated discharge of a firearm. Well, you're going for the sufficiency of the evidence. And under that standard, don't we look at the evidence and the light most favorable to the state and say, okay, well, John L. is a bad guy, but the trial court heard his testimony and believed it. Don't we have to give deference to that? Sure. I have two responses to that. First is you do tend to look at the light most favorable, the evidence in the light most favorable to the state. However, you don't have to throw reason and caution out the window. If it's unreasonable to believe John L. based on this record as it is, then you should take a look, a closer look at this record and take a closer look at whether John L. should be believed. Tell us why it's unreasonable. It's unreasonable for several reasons. First of all, he is the only person to actually be implicated by two different people, two people involved in the shooting at the bus stop and additional circumstantial evidence, but he's the one that actually escapes charges. He's the only person that figures out that not only can he escape charges by deflecting the blame on Declarence Williams, but he happily ties the state's case up for them. Up until this point, absolutely everyone discusses the shootings as two separate events. Aside from John L.'s accusation, which he only figures out after the detectives basically spin feed it to him, Clarence has no involvement, absolutely no connection. They were certainly doing some educating of the person who wound up being their alleged star witness. I think the state would, though, ask you whether or not or tell us that we should look at Figueroa's testimony, and the trial court did seem to rely upon that. What's your response to that suggestion? Sure. I mean, there were two people where Clarence admits that he fired a gun. Understood. We have two other people. Figueroa was one who was driving a car, and he saw presumably Clarence. He did see a shooter by the sandwich shop. He saw him from the back, never saw a face. He says, he gives conflicting evidence, he says that Clarence fired a gun southwest, which according to Tiara Merchant, who was the high school student in the sandwich shop who also saw Clarence fire the gun, she says he fired southwest, and southwest is actually the direction of the gas station. The group of the gangster disciples is due west of Clarence. So he's firing away both from part of Figueroa's testimony and certainly from Tiara Merchant's testimony. So that's number one response for the Figueroa aspect. But Figueroa is inconsistent. He does say, on the one hand, it's southwest. I don't think there's a consistent witness in this case. Tiara Merchant, maybe. You know what? You made lemonade out of those lemons I just threw at you, as you indicated in your brief. Yes. You're correct. Yeah, I mean, Figueroa was one of the inconsistent witnesses. He says that Clarence fired in the direction of the group, but that's not true, because he also says that he fired southwest, which of course was not where the group was. Your Honor, Justice Howes, you asked whether we should give deference to the trial court's findings, and I just want to return to that point briefly, because I do think that that is an important point to make. Usually we do give deference to the trial court's factual findings, but this case presents one of those rare circumstances where no deference should be given, and that is particular. You want us to give deference to the trial court's finding that he was not in a gang, though, don't you? Well, I think we can take that. That certainly would. If the trial court found contrarily on that, that might be something that the state would rely upon in terms of accountability, don't you think? It might help them, but it wouldn't solidify their case in terms of accountability, because we know just gang membership is not enough. You actually have to have a shared intent, a common design, an intent to actually aid and abet those young men at the bus stop, and there's no credible evidence of that. Was there evidence at trial, however, that tended to indicate that the defendant was involved in this preliminary fracas at the gas station before? Sure. I mean, the gas station was ostensibly what started this whole thing off. Clarence does admit to being at the gas station, but he was not involved in the fight. He says that as the fight escalated. We know what he said. Right. Was there other evidence, though, that implicated him in actually being involved in the fight itself, not just being a standby guy? Right. I think John L. may have said that he saw Clarence fighting, but John L. was, of course, all over the place. What about McCaskill, his statement to police, the videotape? Yes. Steve McCaskill is, for the first couple of hours during his conversations with the police, he is absolutely all over the place. Everyone is involved with everything, and he admits that all of that is a lie. And then at trial, he tries to pin everything on Brown, right? Right. Well, although he does, within the third hour of speaking with the detectives, that's when he says that, no, you know what, this is what happened. John L. Brown is the one that orchestrated the shooting. He not only asked me if I had the gun, but he then told everyone, stand back, LaShawn, wait until the disciples are closer before you shoot. Then he takes off his shirt and, in a white tank top, starts saying, as the gangster disciples are coming across the intersection, starts waving his arms and saying, here they come now, here they come now. And you can actually see a man in a white tank top in State's Exhibit No. 6, which is a video clip of the shooting from the bus stop. And you see this man in the white tank top coming to the top right-hand part of the screen, which is, of course, the area closest to the intersection where the disciples are coming over. And he's waving his arms and he's yelling. He's clearly an agitator. He's not any sort of peacemaker or any sort of innocent bystander. And according to Steve's testimony, he's probably that guy. John L. is probably that guy in the video. But while we should take the trial courts, and just to follow up on your point, Your Honor, while we should take notice of the judicial finding that Clarence was not in a gang, that's actually supported by the record. Clarence has no gang tattoos. He has never been admitted to any sort of gang involvement. But where the trial court's findings are actually refuted by the record, that's where no deference should be given. And I want to give three specific examples of that. The first point is where the trial court noted that John L. placed himself and Clarence at the shooting and lent him some credibility because he voluntarily placed himself there. We know that's not true. Steve and Andrew both told the police pretty soon into their discussions that John L. was involved, and not just involved, he actually helped orchestrate the entire shooting. We also know from Tierra Merchant that she was able to identify Clarence. So, you know, John L. is not some hero coming in and telling the truth. The second point is that the trial court noted that John L. saw Clarence and LaShawn fire the gun in the direction of the crowd. Again, completely not true. John L. actually never testified that he saw Clarence fire a gun. And, in fact, it would have been, of course, physically impossible for John L. to see that because Clarence was around the corner and well down the street. We know where he was. Tierra Merchant puts him outside the sandwich shop down the street for at least five minutes before the shooting. We also know that he wasn't even firing in the direction that LaShawn was firing. He was firing, again, southwest towards the gas station when the disciples are due west of him. The final point I just want to make with respect to the trial court's erroneous factual findings is that she noted that Clarence was placed at the scene of the shooting by Andrew, Steve, and Teddy Plummer. Again, completely not true. Teddy Plummer is another high school student who happened to be walking home at the time of the shooting and was actually at the bus stop. He does not mention Clarence whatsoever. And Steve and Andrew both say that Clarence was not there. They never spoke to him. They never planned any shooting with him. They didn't really give Clarence much of a thought. It's very likely that the trial court ended up imputing some of the facts in LaShawn's simultaneous but severed jury trial as to apply against Clarence. But in doing so, the trial court actually created some of the missing evidence in the state's case. We know that John L. is unbelievable simply based on the fact that he's a drug dealer, a drug user. He has several prior felony convictions. He was facing additional prosecution at the time of Clarence's trial. And he openly admitted that he wanted to get back at Clarence for mistreating his sister. All of this, though, absolutely pales in comparison to his biggest motivation to lie, which is the fact that he is the only person that's implicated by two people involved in the bus stop shooting as well as circumstantial evidence, but he escapes charges. John L. stands alone in accusing Clarence of directing LaShawn to wait before firing the gun at the gangster disciples. What is the whole significance of the word wait in the context of this from your perspective? Sure. I mean, I think it goes to intent, a shared common design. We want to get these guys, and we want to make sure that we actually hit one. So wait until they get a little bit closer before you even bother firing. Are you suggesting that there's a more innocent construction or just that defendant wasn't the one who uttered that word? Defendant wasn't the one who uttered it. He was not there. Okay. So you're not asking us to accept a more innocent construction of it? No. Just that it was John L. Brown or somebody else who said it? Absolutely. It's John L. Brown. And it's not even that statement in isolation. Thank you for pointing that out. It's not just that statement. John L. said, do you have the gun? Okay. Everyone get back. LaShawn, wait until they get a little closer. Here they come. Here they come now. LaShawn fires. I mean, it's not just that statement, although it's only that statement that's accredited to Clarence by John L. In reality, John L. was involved in a much larger component in orchestrating the shooting. And the fact remains that Steve, Andrew, LaShawn, and John L. were involved in the shooting at the bus stop. Hearing the shots but only seeing the group of gangster disciples approaching, Clarence fired the gun in the air away from the group. There's absolutely no credible evidence that Clarence had a common design with the young men at the bus stop or that he shared any intent to aid or abet them. At most, Clarence should be convicted for the crime, the offense, that's actually supported by the evidence, which is aggravated discharge. Thank you. May it please the Court, once again, Assistant State Attorney Peter Maltese. Defendant was properly found guilty of murder beyond a reasonable doubt. And the evidence established that before, during, and after the shooting, he had voluntarily attached himself to the group of people who have pled guilty to the murder in this case and has been found guilty of the murder in this case. What did McCaskill do that caused him to plead guilty in this case? What do you think the facts in this case establish? In terms of his culpability. He was at the fight, which occurred a half an hour before the shooting, at the same intersection. Defendant saw him at the fight. He says in the statement he saw him at the fight. And defendant also saw that McCaskill got injured in the fight. McCaskill told defendant, and it's in defendant's statement, that I'm going to get a gun. He didn't use the word gun, and defendant's statement is unclear what he used, but his defendant's statement is very clear that he understood he was going to get a gun. And McCaskill said this to defendant as they both were leaving the fight. A half an hour later, Janelle Brown sees McCaskill, defendant, and co-defendant Jackson coming back to the site. And defendant readily admits that as he's approaching the site of the bus stop and that part of the intersection, that he again exchanged words with McCaskill. And McCaskill says he hopes they come over, them being the other side in the fight before, the gangster disciples who basically control the intersection on the south side. So there's common design, common plan evidence linking McCaskill to both events, the fight before and the shooting after. And the evidence established that McCaskill did in fact have a gun on him at that point and gave it to Bradley. Well, first he told Bradley to shoot. And when Bradley refused, he gave the gun to Bradley to give to co-defendant Jackson. And co-defendant Jackson was one of two shooters in this case. The thing that I think we would like you to examine is what I at least view as being a major deficiency in the proof here. I don't know what is left of Janelle Brown in terms of any credibility after he leaves the witness stand. How is this court to give any credibility to his testimony? It's a trial of prior effects determination and credibility determinations. And this court is obligated to view all the evidence in the light most favorable to the prosecution. And Judge Boyle's determination of Janelle Brown's credibility, she recognized the problems with this credibility. Yes, she recognized there were problems with credibility. She misstated what it was that he actually witnessed and testified that he witnessed. But anything that he said on direct examination was thoroughly taken away on cross-examination. I just don't know what is left at the end of the day from his testimony other than his prior testimony from the grand jury. What's important to remember is that in making her determination, Judge Boyle stated that she did not find him to be the linchpin of the case. And the people never argued that he was the linchpin of the case. Granted, that's pretty incriminating evidence that the court did believe from him that defendant told them to wait until they crossed over. But the court focused on the eyewitnesses. And at this point, she mentioned Merchant and Figueroa, but she also mentioned defendant's statement. And defendant's statement is the one that shows his attachment to the... I hear your argument, but I don't know how anybody could read the record in this case and not think that the state put Janelle Brown on as the very fulcrum of its case. You know, he may not have survived the experience very well, but he was coached by the detectives on accountability. He was put in there specifically to tie this defendant to LaShawn Jackson and McCaskill. And, you know, if he's not in your case, I don't know what case you have left. Well, we have a description of defendant's actions, and a witness... The witness stated he was shooting directly at the crowd. And that's John Figueroa, who was behind defendant at the time. And certainly in a position to see what direction he's firing. Plus, both eyewitnesses demonstrated to the court that defendant was shooting contrary to what he demonstrated in his statement. He was shooting parallel to the ground and not over the crowd, as he gives the indication. What about your colleague's suggestion that both of those witnesses testified that he was shooting to the southwest? The crowd was actually southwest of defendant. Not straight west, as your colleague suggested to us? No. I believe what she's focusing on is defendant's statement. And he was mentioning the crowd coming over to the east side from the west side. And I believe when he's talking about the crowd, he's talking about his people. He's talking about the Stones and the people who he's affiliated with. In the statement, he says he got the gun from another affiliate of the Stones. He claimed the person's no longer with the Stones and he outgrew it, but he's a Stone. And he finds that, according to the statement, he finds that person who got the gun after the shooting on the Stones' side. But be that as it may, the victim, AJ in this case, was southwest of where... where the defendant was standing. It wasn't the state's theory of the case that it was defendant who shot the gun that had the bullet that killed this child, was it? No, no, but... The theory was that it was Jackson and that defendant should be liable on a theory of accountability because he was involved with them in some sort of a plan or something, right? The evidence never established exactly which gun was it that shot the victim in this case. I understand there's no ballistics and, you know, that's not necessarily fatal in cases. I know that. But the way the case was charged and the way the case was tried is the theory being that the... Mr. Jackson was the one who fired the gun that killed this child and that defendant was... should be held accountable to him because he was involved in the same gang activity, involved in the fight, and told the defendant to wait until he had a better shot at these guys. That was the way the case was charged and tried, am I correct? Correct. And the case turns on what defendant's intention was when he shot. Correct. And the defendant's explanation of his intent defies credibility. How so? Well, when he states he heard the initial shot and he doesn't know where that shot came from. He was just with McCaskill and McCaskill just said he went to get a gun and that he hopes the people come over and defendant saw the people coming over. It's clear that defendant had a pretty good idea where that shot was coming from. His statement defies credibility in the sense that he's at the fight, the initial fight, again less than a half an hour before the shooting, doesn't partake in the fight because he has a gun and feels he needs to leave the area because he has a gun but then he returns with the gun and he returns not once but he returns twice according to his statement. After the shooting he goes to his cousin's house but he comes back. And it's telling that after the fight he's with McCaskill again on 54th Place. Again, before, during and after the shooting, defendant's intentions are very clear. Well, when you're trying to interpret his intentions, don't you have to have some kind of evidence in here? The evidence was the weight statement? You know, you just can't say, well, he was with him and therefore I find accountability. Don't you have to have some kind of evidence of a common design or plan? And I know you're not going to get direct evidence of that, but what is the evidence of the direct? Well, the direct is that he wasn't just at the initial fight. He walked over with the two young men who were beat up by the gangster disciples. And when I asked this question, I kind of said we're kind of dismissing this weight statement because we have Merchant saying I saw the defendant five minutes before the shooting started standing by the phone. So he didn't say wait immediately before the shooting, right? I'm sorry. I didn't hear all the questions. There's a weight statement. I'm trying to pin this down. Oh, the weight statement. Now, are we depending on this weight statement to show accountability at this point in light of the testimony of Merchant? Merchant saying I saw the defendant at least five minutes before the shooting started? It's well established that lay witnesses' estimates of time are not completely established what the time is. So yes. How long after the weight statement did the shooting start? What is the state's position on that? Whatever time it took for him to get over to the other side. What about his phone call? He's on the phone, on the cell phone. I know you said the time thing can be distorted, but here he's having a conversation while she's in the store buying a sandwich, and he's there the whole time. His statement says he was on the phone checking his minutes. And she's buying a sandwich and observing him outside. She corroborated it. Yes. And she's a disinterested person by everybody's account. He's associated with the other murderers in this case before and after. And he's informed of what McCaskill's intentions are. And he comes back and he's actually, there's no question he's at that bus stop. You say that the, and we understand we have to give deference to the trial court's findings and view them in the light most favorable to the state, but in light of the fact that the trial court specifically found that he was not involved in the gang, how can you say he was involved with them before and involved with them after as if that's still in play here? The trial court found to the contrary. Well, the trial court found that he was not officially in the gang, but his actions and his statements clearly shows he's aligned, what side he's aligned. He's not a neutral party in the rivalry between the Stones and the Disciples. He brings the two young men over there to fight the Disciples. He's, he felt the need by his own statement to shoot a single warning shot to scare the Disciples. He associates with McCaskill after he leaves the fight with him and he comes back with him and he goes, excuse me, he goes to where the other Stones are. He gets a gun from somebody who's associated with the Stones. Now, the co-offender, the juvenile Alexander Bradley, he wasn't officially a Stone either, but he was associated with it. I mean, clearly the defendant's actions shows which side he's aligned. He's not some neutral party. If the court had found that he was involved in this gang and he was a gang member and that he was directly involved in the fight, the events beforehand, specifically that he was fighting, you might be in a different position than I think you find yourself today. Okay. Again, the court did not focus on Janelle's testimony to connect defendant to the co-offenders here. She said she did believe, the trial court that is, said she did believe the statement. However, she said beyond that, the eyewitness's descriptions of defendant's actions and defendant's statement that places him with his co-defendants was what really established accountability in this case. The weakness and the credibility of the witness Brown was before the court and it was for the court to balance it. And I might point out, this is not the trial of people versus Janelle Brown versus Williams. And defendant's actions in the shooting, even by itself, would be sufficient to show accountability. It's well established that when two people shoot at a single target, accountability is there. In this case, defendant's statement that he shot a single shot was completely contrary to both eyewitnesses. Merchant saw two shots come from his gun and then ducked and heard additional firings. And Figueroa says that defendant shot multiple times to the crowd of people. The evidence is overwhelming that defendant had a common design with these other defendants. His defense is that he just happened to be there and he just happened to shoot at the same time that these other people, who he was with before and who he was with after. The evidence is overwhelming. This court must view the evidence in the light most favorable for the people. And for these reasons and the reasons stated in the people's brief,  Thank you. Ms. Wood. Thank you. Just briefly, Your Honors, I just would like to clarify. For the geographical understanding of the events of that day, I would refer you to the State's Exhibit No. 7, which is an aerial map of the intersection of 55th and Holstead. And by looking at that map, you can see not only that the group of gangster disciples who were crossing that intersection of 55th and Holstead towards the bus stop, that is in a due west direction from where Clarence was. So when you take that into consideration, the actual visual image of how the intersection and the events played out, you can see that Tierra's testimony makes sense, that Clarence's statement makes sense, that Figueroa's testimony of Clarence shooting southwest is consistent with Tierra and Clarence. A couple of additional points. The State is sort of backing away from John L's accusation that Clarence is the one who told LaShawn to wait and instead is relying on this idea that Clarence is associated with Steve McCaskill, Andrew Bradley, LaShawn Jackson. He might be geographically linked to them because I think he lives in that area of town. But there's absolutely no evidence that he's friends with them. He knows them. Everyone's dating everyone's sister, apparently, and he knows them from the area. Everyone's running away from the fight. They're running in the same direction. They happen to run into each other. But there's no evidence that they hang out, that they're good friends, that they're related. There's nothing like that. In terms of the defendant's acts, it's a stretch to say that his acts are unreasonable. He did not just happen to shoot. He shoots in reaction to seeing a group of angry gangster disciples crossing out of their territory, coming towards the street that he's on. He doesn't know where the shots are from. So where is he if he's in fear? I'm sorry? If he's on the other side and he's in fear, why is he not a party to that group? Because I just walked down the street and I'm with this gang. Don't I know where the gang lines are? Don't I know that I can't cross into that other line without being accountable as one of them? Well, I don't think crossing over the line makes you accountable. Again, you're only accountable if you share a common design. He didn't cross over the line. The gangster disciples are the ones. He left and came back. He did go to the gas station. So therefore he's back in the same bubble. How does he get out of the bubble? Well, the fight, although it sort of set off the set of events that happened at the bus stop, for Clarence it was an entirely separate event. Now, let's keep in mind a couple. How can it be separate? Because he was not then later involved with anything that happened at the bus stop. What happened at the gas station started as a one-on-one fight between a disciple and a stone to settle the score. When that escalated and it got quickly out of hand, I think there was about 25 disciples and 14 stones, Clarence ran away. So you're limiting his involvement to an immediate few hours or non-involvement for the rest of his life. In other words, you're saying because he didn't do AB at that exact moment, therefore he's not a part of it. Right. In other words, if I am a gang member or I am dating one of their fellow members and I carry a gun and I shoot off, but I am not a member, so therefore I'm not accountable. Because I hang with them, but I'm not a gang member. Well, again, I think that if he had gang membership, and again the evidence does not support that conclusion nor did the trial court find that, but if the evidence had supported that, then we might have something, but it would not be enough because we know that guilt by association is thoroughly discredited. We don't do that here. You have to have more. And on this record, there isn't the more. Counsel makes the argument that even if we discount the weight argument, we have a situation where shots are fired toward the victim and then the defendant here also fires at those same targets. And if we look at the evidence in the light and most favorable to the prosecution, we can say, well, they had a common design to shoot at this target. How do we get around that? Sure, and I would agree with that notion if the evidence suggested that he shot at the victim. Tiara Merchant, again, the most credible witness, the only credible witness perhaps in the entire trial. So why is he shooting a gun? Again, he's in fear. He sees a group coming. So we just let people shoot guns if they're in fear? Oh, absolutely not. He should be held accountable for firing a gun on the streets of Chicago, but the evidence for that goes to aggravated discharge of a firearm. There's absolutely no intent to murder anyone or intent to aid and abet those young men at the bus stop who did have intent to murder. What he did was wrong, but what he did was not murder. It was aggravated discharge of a firearm. Again, if you take a look at the State's Exhibit Number 7, you can see a good aerial picture of it, and it's very likely that it's LaShawn's weapon that actually killed this young boy just by the sheer fact that Well, that was the State's theory and the way they charged the case. Right, right. And in combination with the fact that all the witnesses say that Clarence shot Southwest, it's very likely that he was not the one to actually inflict any harm. I mean, again, basically the State's backing away from John L. as their linchpin of the case. They mentioned that it's not the case of people versus John L. Brown, but perhaps it should be, because based on this record, there's absolutely more to convict John L. Brown under accountability than there is Clarence. And again, because of that, I would ask this Court to reduce Clarence's conviction. Thank you. Thank you. The case was well-argued and well-briefed. We'll take the matter into advisement, and a decision will be in due course. Thank you very much.